IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CONNIE L. STENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 06-00437-AS |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| LINDA S. McMAHON,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DAVID B. LOWRY
9900 S.W. Greenburg Road
Portland, Oregon 93372

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

NANCY A. MISHALANIE
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. She is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

ASHMANSKAS, Magistrate Judge:

Plaintiff Connie L. Stenberg seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1956, Stenberg completed high school and one year of college education. Tr. 65, 131.[2] Between 1982 and 1996 Stenberg worked as an "accounts payable/receivable" clerk. Tr. 126.

Stenberg alleges disability since October 11, 2002, due to fibromyalgia and chronic fatigue syndrome. Tr. 125. Stenberg's application was denied initially and upon reconsideration. Tr. 33-37, 40-42. After Stenberg's hearing before an Administrative Law Judge ("ALJ"), the ALJ found Stenberg could return to her past relevant work and, therefore, was not disabled. Tr. 23-24. Stenberg seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Stenberg challenges the ALJ's evaluation of the evidence

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer July 27, 2006 (Docket #8).

2 - FINDINGS AND RECOMMENDATION

and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the

3 - FINDINGS AND RECOMMENDATION

Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found Stenberg's statements concerning her limitations and their impact upon her ability to work "not entirely credible" in light of the medical evidence, as well as her drug-seeking behavior and failure to complete treatment. Tr. 22, 23. The ALJ evaluated Stenberg's RFC:

> [T]he claimant retains the residual functional capacity to lift ten pounds occasionally and less than ten pounds frequently. She is able to sit and/or stand for four hours in an eight-hour workday and is able to sit for four hours in an eight-hour workday or requires the ability to sit and stand as necessary. She further requires the ability to stretch a few minutes every hour and the usual breaks every two hours. She should avoid extremes of temperature or humidity. She can occasionally climb, balance, kneel, crouch or crawl and can occasionally reach overhead and can occasionally push/pull.

Tr. 22.

At step four, the ALJ found that Stenberg's RFC did not preclude her from performing her past relevant work "in accounts receivable/payable." Tr. 23. The ALJ solicited testimony from a vocational expert ("VE") who confirmed Stenberg could return to this work. Tr. 728. Accordingly, the ALJ determined Stenberg was not disabled under the Act at any time through the date of his decision. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th

Cir. 2004). This court must weigh "both the evidence that supports and detracts from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

## DISCUSSION

Stenberg contends the ALJ failed to accurately assess her RFC because the ALJ did not properly apply the provisions established in Social Security Ruling (SSR) 96-8p (available at 1996 WL 374184). Stenberg also claims the ALJ improperly addressed her testimony, improperly addressed medical evidence, improperly addressed lay witness testimony, and erred in finding she could return to her past relevant work at step four.

**I.    Credibility**

Stenberg suggests the ALJ improperly rejected her symptom testimony because her symptoms "could be reasonably expected." Pl. Opening Br. 32. The ALJ found that Stenberg's "statements concerning her limitations and their impact upon her ability to work are not entirely credible in light of the opinions of the treating and examining physicians and other reason[s]...." Tr. 23. Other reasons cited by the ALJ include Stenberg's non-compliance with physical therapy treatment, Stenberg's refusal to utilize pain control methodologies beyond narcotics, and her refusal to seek recommended mental health treatment. Tr. 21-22. The ALJ also noted Stenberg's drug-seeking behavior and accompanying threats to medical providers. Tr. 21. Finally, the ALJ

noted Stenberg's inconsistent statements regarding receipt of unemployment benefits.  Tr. 22.

      *a.*      *Credibility Analysis*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, including any failure to seek treatment, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

      *b.*      *Non-Compliance With Treatment*

The ALJ noted that Stenberg did not attend prescribed physical therapy sessions, missing fifty percent of her appointments.  Tr. 18, 19, 21.  The ALJ also noted that Stenberg refused suggested mental health treatment.  *Id.*  The record confirms that Stenberg failed to complete physical therapy, missing fifty percent of her appointments.  Tr. 531, 539.  Stenberg also failed to follow a referral to a pain psychologist, and declined mental health treatment.  Tr. 330, 531, 533.  An ALJ may consider a claimant's failure to seek treatment.  *Smolen*, 80 F.3d at 1284, *Bunnell v. Sullivan*, 912 F.2d 341, 346 (9th Cir. 1990) (*en banc*).

Stenberg suggests a claimant with a mental disorder cannot be faulted for failing to seek treatment. Pl. Opening Br. 21, citing *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996). The *Nguyen* panel noted that, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen*, 100 F.3d at 1465. The panel subsequently found other reasons for rejecting the ALJ's analysis of a physician's opinion. *Id.* This reasoning does not affirmatively establish that a claimant "cannot be faulted for failing to seek mental health treatment." Stenberg's argument furthermore does not apply to her refusal to comply with physical therapy treatment.

Stenberg finally suggests that a claimant cannot be faulted for failing to seek treatment she cannot afford. Pl. Opening Br. 32, citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Stenberg testified at her hearing that she did not seek treatment from a psychiatrist of psychologist because she could not afford it. Tr. 713. She also stated, "I would be happy to [attend treatment] if I had some money or medical insurance." *Id.* This statement contradicts Stenberg's statement to Dr. Siebell she would "receive no benefit" in pursuing such therapy. Tr. 533. The ALJ may note such statements in his credibility determination. *Smolen*, 80 F.3d at 1284.

For these reasons, the ALJ's finding that Stenberg failed to seek treatment should be sustained.

### c. *Drug-Seeking Behavior*

The ALJ cited numerous instances in the record demonstrating Stenberg's attempts to procure narcotic painkillers. Tr. 18-19, 21-22. These references are well supported by the record. Tr. 330, 334, 367, 373, 533. Stenberg argues that such behavior does not establish

7 - FINDINGS AND RECOMMENDATION

malingering. Pl. Opening Br. 32. The ALJ made no malingering finding and did not suggest Stenberg's drug-seeking behavior justified a malingering finding. An ALJ may consider a claimant's reputation for dishonesty or her conduct. *Smolen*, 80 F.3d at 1284, *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's reference to Stenberg's misrepresentations and subsequent threats regarding her narcotic pain medications should be sustained under this standard.

### d. *Unemployment Benefits*

The ALJ also suggested Stenberg reported that she received unemployment benefits and relied upon this suggestion to support his negative credibility finding. Tr. 22. The ALJ reasoned that, "While the claimant has denied receiving worker's compensation benefits, Dr. Kelly noted the claimant was receiving such benefits." *Id.*

Stenberg's hearing testimony does not indicate that she denied drawing unemployment benefits to the ALJ. Tr. 701. The ALJ drew this inference from Dr. Kelly's October 2002 statement that Stenberg is "currently getting unemployment." Tr. 611. The file history is silent regarding unemployment insurance benefits. The specific unemployment insurance to which Dr. Kelly refers, and it's attendant requirements, is unclear from the record. This court's review is restricted to the record. The ALJ's reasoning regarding "unemployment benefits" is not supported by the record and should not be sustained.

### e. *Medication Side Effects*

Stenberg suggests the ALJ failed to properly consider the side effects of her medications. Pl. Opening Br. 28. Ordinarily, the ALJ must consider established side effects of medications in his RFC assessment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), SSR 96-8p *5 (available at

1996 WL 374184). Stenberg does not point to any medical evidence documenting side effects of her medication. The record instead suggests Stenberg abused her medication. Because the ALJ appropriately found Stenberg not fully credible, he was not obligated to include such symptom testimony in his RFC analysis. *See Smollen,* 80 F.3d at 1284.

In conclusion, this court finds that the ALJ's credibility conclusion, absent his unemployment benefit finding, should be sustained.

## II.   Medical Source Statements

Stenberg also submits that the ALJ failed to incorporate all limitations assessed by examining physicians Drs. Ogisu and Kelly in his RFC assessment. Pl. Opening Br. 27. The ALJ considered the opinions of Drs. Ogisu and Kelly. The ALJ noted Dr. Kelly's review of Dr. Siebell's notes and Dr. Kelly's subsequent reluctance to provide Stenberg with narcotic pain medication. Tr. 19. The ALJ also noted Dr. Ogisu's examination, finding it showed that, "the claimant's pain appeared to be well controlled with her medication and that she was able to engage in a modified range of sedentary exertion." *Id.* The ALJ finally noted Dr. Ogisu's concerns regarding Stenberg's "lack of compliance with medical directives [and] her receiving narcotic[s] from multiple physicians." *Id.*

### a.   *Treating Physician Dr. Kelly*

Stenberg notes her reports of "chronic back pain, anxiety and fibromyalgia" to Dr. Kelly. Pl. Opening Br. 18. She asserts the ALJ rejected Dr. Kelly's opinion that she would have two or more absences per month. Pl. Opening Br. 23.

Dr. Kelly's treatment notes show that she treated Stenberg between January 13, 2000, and May 20, 2004. Tr. 623, 682. Dr. Kelly made no original diagnoses, noting only Stenberg's

9 - FINDINGS AND RECOMMENDATION

reported symptoms and fibromyalgia diagnosis. Tr. 611. The record shows that Dr. Kelly consulted with Dr. Siebell regarding Stenberg's requested narcotics and that Dr. Kelly suggested a pain clinic would be better able to provide Stenberg appropriate treatment. Tr. 577. This court finds the ALJ's synopsis of Dr. Kelly's notes is based upon the record.

Dr. Kelly endorsed a "check box" statement suggesting Stenberg would have absences "about twice a month" and endorsed a statement that Stenberg has "continuously been unable to work" since October 11, 2002. Tr. 635. Dr. Kelly provided no explanations or clinical findings in support of her endorsements. *Id.* An ALJ may reject physician's opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ was therefore not required to include these limitations in his RFC assessment. Any omission is insignificant. This court will not recommend reversal for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Stenberg finally suggests Dr. Kelly's notes "document depression and anxiety." Pl. Opening Br. 20. The indicated pages show Dr. Kelly's notation of Stenberg's anxiety reports. Tr. 679-680. The indicated pages do not reference depression and do not show that Dr. Kelly diagnosed an anxiety disorder. An ALJ may disregard a physician's reiteration of patient complaints if the claimant is found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). For this reason the ALJ's omission of Dr. Kelly's reports of Stenberg's alleged anxiety disorder should not be disturbed.

Furthermore, because Stenberg's pain is based upon her own subjective statements and the ALJ appropriately found Stenberg not credible, the ALJ was not required to include Dr. Kelly's reports of Stenberg's pain and anxiety complaints in Stenberg's RFC assessment.

10 - FINDINGS AND RECOMMENDATION

*Tonapetyan*, 242 F.3d at 1149.

### b. *Examining Physician Dr. Ogisu*

Stenberg suggests the ALJ improperly failed to include Dr. Ogisu's opinion that she should avoid frequent lifting and cannot engage in repetitive pushing and pulling. Pl. Opening Br. 27. Dr. Ogisu conducted a consultative examination and concluded Stenberg could occasionally lift of carry ten pounds, but should avoid "frequent" lifting and carrying. Tr. 687.

The ALJ noted Dr. Ogisu's finding that Stenberg could "engage in a modified range of sedentary exertion." Tr. 19. Social Security Regulations describe sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). This standard encompasses the limitations Stenberg asserts above. Stenberg's argument that the ALJ failed to appropriately consider Dr. Ogisu's opinion is not based upon the record and therefore fails. The ALJ's assessment should be sustained.

### c. *Examining Psychologist Dr. Henninger*

Stenberg suggests examining psychologist Dr. Henniger's report establishes that she is disabled based upon his diagnosis of major depression, anxiety disorder, and Global Assessment of Functioning (GAF) analysis. Pl. Opening Br. 20. Stenberg's submission omits the "mild" qualifier Dr. Henniger attached to his depression diagnosis. *Id.*

Dr. Henniger evaluated Stenberg in conjunction with treatment at a pain management center. Tr. 547-551. Dr. Henniger suggested "working diagnoses" of "major depressive

11 - FINDINGS AND RECOMMENDATION

disorder, single episode, mild," anxiety disorder, pain disorder, sleep disorder, and nicotine dependence. Tr. 550. Dr, Henninger based his diagnostic suggestions and attendant GAF analysis upon Stenberg's report and her responses to test questions. Tr. 548, 550. Again, an ALJ need not accept a physician's opinion based upon reports or "testing within [a claimant's] control" produced by a claimant deemed not credible. *Tonapetyan*, 242 F.3d 1149.

For this reason, the ALJ's omission of Dr. Henniger's suggestion of "mild" major depression and anxiety is insignificant. This court will not recommend reversal for such omissions. *Burch*, 400 F.3d at 679.

In conclusion, Stenberg fails to establish that the ALJ improperly rejected the opinions of Drs. Kelly, Ogisu, and Henniger. The ALJ's analysis of the medical record should be sustained.

### III.   Lay Witness Testimony

Stenberg suggests the ALJ failed to properly evaluate statements submitted by her fiancé, James Powell. Stenberg cites 20 C.F.R. § 404.1513(e) and "established case law" in support of this alleged omission. Plaintiff's Opening Brief, 33. Stenberg also asserts that the ALJ erroneously rejected statements by her unidentifiable "former employer," as well as Nurse Practitioner Folk, and chiropractor Michael Whitton.   Pl. Opening Br. 28.

####   *a.   Evaluating Lay Witness Testimony*

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell

whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 512, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Id.*

### b.   *James Powell*

The ALJ did not discredit Powell, finding him "generally credible as much as he is reporting his observations of the behavior the claimant demonstrates." Tr. 22. The ALJ found Powell's statements regarding the extent of Stenberg's impairments unsupported by the medical record and the opinions of Stenberg's treating and examining physicians. *Id.* Finding such statements unsupported by the medical record is an acceptable reason to reject aspects of lay witness testimony. *Lewis*, 236 F.3d at 512. Stenberg's submission that the ALJ failed to assess accurately Powell's testimony fails.

### c.   *Stenberg's Past Employer*

Stenberg argues that the ALJ failed to address an "employer questionnaire" form submitted by her past employer. Pl. Opening Br. 27.

The file contains two such forms. The first form was sent to the "EC Company" by Disability Determination Services. Tr. 168. This form contains an illegible signature. Tr. 170. The response on the form indicated that Stenberg's attendance was poor. Tr. 169. The form does not indicate that Stenberg's attendance was poor due to any impairment. *Id.* The response specifically states that "any additional supervisory requirements were due to performance issues not health matters." Tr. 169.

13 - FINDINGS AND RECOMMENDATION

The second form was submitted to "EC Power Systems" by Stenberg's attorney.  Tr. 171.  The signature is again illegible.  Tr. 173.  In response to questioning regarding "work avoidance behavior" the response indicates uncertainty regarding the onset of Stenberg's illness.  Tr. 172.  In response to the question, "Was claimant terminated or did claimant quit because of difficulties related to his/her illness/injury?" the response did not affirm "yes" or "no," instead stating, "other," without explanation.  Tr. 172.  The response affirmatively indicates that Stenberg's performance "near the end of claimant's employment" was adversely affected by numerous difficulties relating to concentration, stress, memory, getting along with co-workers, and pain.  Tr. 172.  The response indicates no explanations or support for these affirmations.

Omission of lay witness testimony regarding a claimant's functioning in a work environment is not harmless.  *Stout v. Commissioner*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  This is not presently the case: the first form establishes only that any work-related difficulties Stenberg experienced were not related to alleged impairment.  The second form provides no specific explanations for Stenberg's alleged difficulties.  Furthermore, both forms bear illegible signatures and cannot be attributed to a specific witness.

For these reasons, the ALJ's omission of the forms does not predicate a finding of disability.  The ALJ is not required to discuss evidence "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  This court will not recommend reversal for the ALJ to address such evidence.

### d.     *Nurse Practitioner Folk and Chiropractor Whitton*

Nurse practitioners and chiropractors are appropriately evaluated as "other" sources, or lay witnesses.  20 C.F.R. §§ 404.1513(d), 416.913(d).  They are not accorded the deference due a

14 - FINDINGS AND RECOMMENDATION

treating or examining physician.

The ALJ noted that the combined opinions of Folk and Whitton suggest Stenberg would miss four or more workdays per month. Tr. 22. The ALJ concluded, "it is clear these opinions are based solely upon the claimant's subjective pain complaints." Tr. 22. The ALJ went on to say that the record did not support the credibility of Stenberg's pain complaints. *Id.* This court affirms the ALJ's credibility decision. Therefore, the ALJ need not consider other sources repeating the claimant's complaints. See *Tonapetyan*, 242 F.3d at 1149.

Stenberg does not point to clinical observations made by Folk or Whitton that are distinct from her subjective pain complains. Stenberg suggests Folk noted Stenberg experienced pain as a response to stress, and contends the ALJ failed to properly account for this observation under SSR 85-15. The indicated transcript citation shows a letter from a pain specialist addressed to Folk, rather than a statement from Folk. Tr. 336. The record does not show that Folk herself observed any correlation between Stenberg's reports of pain and stress.

For these reasons, the ALJ's analysis of Folk and Whitton's statements should be affirmed.

## IV.  Social Security Ruling 96-8p

Stenberg contends the ALJ improperly applied Social Security Ruling 96-8p in reaching his RFC calculation. Stenberg specifically suggests that the ALJ failed to identify a "function by function" analysis of capabilities. Pl. Opening Br. 25. Stenberg also suggests the ALJ erred in adopting an RFC calculation that did not account for side of effects of her medications. Finally, Stenberg suggests that SSR 96-8p establishes that the ALJ failed consider the combined effects of her impairments.

15 - FINDINGS AND RECOMMENDATION

### a.       *"Function by Function Analysis"*

Stenberg argues that the ALJ violated SSR 96-8p by not conducting a function-by-function analysis of his limitations. However, the regulation does not require an ALJ to discuss a claimant's limitations with respect to each of the fifty-four work functions. *See* 20 C.F.R. § 404.1545. Here, the ALJ discussed the relevant evidence and relied on the findings of Drs. Kelly and Aegis, as well as other treating, examining, and reviewing physicians. This analysis satisfied the requirements of SSR 96-8p.

### b.       *"Regular and Continuing Employment"*

SSR 96-8p states, "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p *1. Stenberg suggests the ALJ's RFC assessment failed to account for her need to miss two days of work per month, her daily naps, and her allegations of constant pain. Pl. Opening Br. 26. Stenberg does not point to evidence other than her own testimony suggesting she requires bimonthly absences or a daily nap. No evidence in the medical record suggests Stenberg requires such accommodations.

RFC limitations must be supported by medical and other evidence of record. 20 C.F.R. § 404.1545. RFC limitations must also account for any pain testimony unless the ALJ appropriately finds the claimant not credible. 20 C.F.R. §§ 404.1545(a)(I), 416.945(a)(I), *see Smollen*, 80 F.3d at 1284. Here, the ALJ appropriately found Stenberg not credible for the reasons discussed above. The ALJ was therefore not required to include limitations stemming from Stenberg's subjective pain reports in his RFC calculation.

This court finds the ALJ's credibility assessment was conducted under the proper legal

16 - FINDINGS AND RECOMMENDATION

standards. Therefore, the ALJ was not required to include Stenberg's subjective limitations regarding pain and fatigue in his RFC assessment. *Smollen*, 80 F.3d at 1284. Stenberg's submission that the ALJ failed to properly account for these alleged restrictions fails.

### c.    *Severity and Combined Effects of Impairments*

Stenberg argues that the ALJ committed legal error in failing to consider her impairments in combination. Pl. Opening Br. 19, 27. This court notes that an ALJ is not required to consider impairments in combination unless a claimant presents evidence of equivalency. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

In making a finding that a claimant does not meet a listing, singularly or in combination, the ALJ must consider the "symptoms, signs, and laboratory findings" regarding the claimant's impairment as reflected in the medical record. *Marcia*, 900 F.2d at 176. He may not conclude "the claimant has failed to provide evidence of medically determinable impairments that meet or equal the listings..." without reference to the medical record. *Id.* Stenberg suggests the ALJ failed to adequately consider her alleged depression and anxiety in making his severity finding. Plaintiff's Opening Brief, 21.

As discussed above, this court finds that the ALJ appropriately based his findings upon the medical record. The ALJ specifically discussed the evidence produced by Stenberg's treating physician Dr. Kelly. The ALJ adequately cited records submitted by Dr. Kelly and other treating physicians, and appropriately discussed Stenberg's mental impairments. For these reasons, this court finds the ALJ's summary of the evidence sufficient in considering whether Stenberg's combined impairments were severe.

///

17 - FINDINGS AND RECOMMENDATION

## V.     The ALJ's Step Four Finding

Stenberg suggests the ALJ 's finding that she could return to her past relevant work contradicts SSR 82-62 (available at 1982 WL 31386) and SSR 96-8p.  Stenberg claims the ALJ's step four finding is not supported by substantial evidence because the ALJ failed to make specific findings of fact comparing her RFC with the physical and mental demands of his past relevant work.  Pl. Opening Br. 29  Stenberg claims the ALJ failed to perform "a functional analysis of any of the mental and physical abilities required for Ms. Stenberg's prior job and compare it to her existing capabilities."  Pl. Opening Br. 30.

Stenberg argues that failure to comply with the requirements of SSR 82-62 constitutes reversible error, citing *Sivilay v. Apfel,* 143 F.3d 1298 (9th Cir 1998).  The *Sivilay* Order reads in full:

> We vacate the findings of the administrative law judge for the
> misapplication of Social Security Rulings 82-61 and 82-62.
> *See Henrie v. U.S. Department of Health & Human Services,*
>  13 F.3d 359, 360-61 (10th Cir. 1993).  On remand, we direct
> the administrative law judge to investigate fully the demands
> of the applicant's past work and compare them to the appli-
> cant's residual mental and physical capabilities.

According to the *Sivilay* appellate briefs, the ALJ found that the claimant could return to past work as a shrimp peeler and cutter/paster.  The ALJ found the claimant limited to simple tasks and instructions of unskilled work.  The ALJ did not address the claimant's testimony as to the prior work experience and the tools, machines, and interactions with coworkers that occurred at the prior work places.  1997 WL 33572960.

In this case Stenberg and the VE testified regarding the physical and mental demands of Stenberg's past work.  The VE is an "informed source" within the meaning of SSR 82-62.  The

18 - FINDINGS AND RECOMMENDATION

testimony establishes that Stenberg's past work is sedentary and skilled. Tr. 728. Stenberg has not pointed to any credible evidence, nor can this court find any evidence, that any of her limitations precluded her ability to perform her past work during the time period at issue. The ALJ properly relied on Stenberg and the VE and properly found that Stenberg retained the residual functional capacity to perform modified sedentary work. *Osenbrock v. Apfel*, 240 F.3d 748, 1164-65. The ALJ's step four analysis should be sustained.

## CONCLUSION

The Commissioner's decision that Stenberg did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and the case should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due March 2, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within ten days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 15th day of February, 2007.

    /s/Donald C. Ashmanskas
    DONALD C. ASHMANSKAS
    United States Magistrate Judge